UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JUAN HERRERA RAMIREZ,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, et al.,<br><br>Respondents. | Case No. 5:26-cv-03938-DTB<br><br>**ORDER GRANTING PETITIONER'S MOTION TO ENFORCE JUDGMENT** |

## I.
## PROCEEDINGS

On July 14, 2026, petitioner Juan Herrera Ramirez ("Petitioner"), represented by counsel, filed a "Verified Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief" ("Petition"). (Docket No. 1).

On July 28, 2026, following Respondent's acknowledgment that Petitioner appeared to be a member of the Bond Eligible Class of detainees certified in Maldonado Bautista v. Santacruz, Case No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) reconsideration granted in part, 813 F. Supp. 3d 1075 (C.D. Cal 2025), amended and superseded on reconsideration, 813 F. Supp. 3d

1084 (C.D. Cal 2025) ("Bautista"), and that, as such, Petitioner is entitled to a bond hearing pursuant to the judgment in Bautista (see Docket No. 9 at 2-3),[1] the Court, based on Respondents' election not to oppose the merits of the claims alleged in the Petition, on Respondents' affirmative assertion that they do not oppose a bond hearing pursuant to 8 U.S.C. § 1226(a)/Bautista for Petitioner, and on the Court's finding that that the sixth and seventh claims alleged in the Petition – Petitioner's continued detention violates 8 U.S.C. § 1226(a) and Petitioner's right to due process (Docket No. 1 at 32-34) – have merit, determined that habeas relief, specifically, a bond hearing, was warranted. (Docket No. 11 at 5-7).[2] The Court issued the following Order:

> IT THEREFORE IS ORDERED that Judgment be entered: (1) Granting the Petition; (2) ordering Respondents to provide Petitioner Juan Herrera Ramirez (A# 246-061-978) with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a), as well as 8 C.F.R. §§ 1003.19 and 1236.1, **and at which the government bears the burden of proof of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community**,[FN 7] within seven (7) days of the date of the date of this Order; (3) ordering Respondents to provide the immigration judge conducting the bond hearing with a copy of this Order; (4) ordering Respondents to release Petitioner from custody within eight (8) days following the date of this Order if he has not been provided with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a); and (5) ordering Respondents to file a status report within two (2) business days of the date of Petitioner's bond hearing or the date of Petitioner's release, attesting to Respondents' compliance with this Order.

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] While the Court acknowledged Petitioner's concerns about possible issues with a bond hearing, the Court stated it was unable to find, on the record before it, that a bond hearing for Petitioner would be futile. (Docket No. 11 at 6 n.5).

> [FN 7]: The immigration judge must exercise his or her discretion to make a determination about whether to release Petitioner on bond based on relevant factors, including, but not limited to, criminal history, immigration history, manner of entry, whether fixed residence, length of residence, family ties, employment history, and compliance with prior orders. See Matter of Guerra, 241 I. & N. Dec. 37, 40 (BIA 2006). In addition, the immigration judge must provide the reasons for the decision orally or in writing. See 8 C.F.R. § 1003.19(f).

(Docket No. 11 at 7 ("July 28, 2026 Order"), emphasis added).

On July 28, 2026, Judgment, containing the same language as the language immediately above, was entered. (Docket No. 12).

On August 5, 2026 (pursuant to the Court's July 28, 2026 Order, see Docket No. 11 at 7), Respondents filed a Status Report. (Docket No. 13). Respondents informed the Court that Petitioner had received a bond hearing and that the Immigration Judge had denied Petitioner's request for a change in custody status. (Id. at 2-3). Attached to the Status Report is a copy of the Order of the Immigration Judge dated August 4, 2026, stating that the Immigration Judge had denied Petitioner's request for a change in custody status because:

> [Department of Homeland Security] met its burden to establish by clear and convincing evidence that [Petitioner's] release would pose such a significant flight risk that no amount of bond and/or alternatives would be appropriate.
>
> Indeed, the Court gave an individualized consideration to all flight risk factors, including the surreptitious entry into the United States, dubious reliability of [Petitioner's] address, his limited ties to the United States, dubious sponsorship from a boss who evidently provided unauthorized employment, and an overly speculative pathway to relief. See Matter of Guerra, 24 I&N Dec. 803, 805 (BIA) 2020 (the limited prospects for relief and the speculative "likelihood that relief from removal will be granted" substantially increases the flight risk because the applicant has

> limited incentive to appear for any future immigration proceeding or for removal).

(Docket No. 13 at 4-5).[3]

On August 7, 2026, Petitioner filed, *ex parte*, a Motion to Enforce Judgment (Docket No. 14), accompanied by a supporting Declaration (Docket No. 14-1) with four supporting exhibits (Docket Nos. 14-3 through 14-6).[4] Petitioner contends that the bond hearing for Petitioner violated the Court's July 28, 2026 Order and was constitutionally defective. Specifically, Petitioner argues that the Immigration Judge did not place the burden of proof on Respondents to prove by clear and convincing evidence that Petitioner is a flight risk, that the Immigration Judge's findings are not supported by the record, and that the Immigration Judge failed to consider certain Guerra factors that weigh against the finding that Petitioner is a flight risk. (Id. at 5-6, 9, 13-25).

On August 10, 2026, Respondents filed an Opposition to the Motion to Enforce Judgment ("Opposition"). (Docket No. 15). Respondents contend that (1) Respondents have the discretionary authority to detain individuals during ongoing removal proceedings, (2) Petitioner failed to exhaust his administrative remedies, (3) the Court lacks jurisdiction to review the outcome of the bond hearing to the extent Petitioner challenges the weighing of the evidence, and (4) the Court lacks jurisdiction under 8 U.S.C. § 1252(g). (Id. at 2-7).

/ / /

---

[3] Respondents did not provide a copy of the bond hearing transcript or any of the documents submitted to the Immigration Judge.

[4] The exhibits are: (1) Record of Deportable/Inadmissible Alien for Petitioner (Form I-213), the only evidence submitted by Department of Homeland Security ("DHS") at the August 4, 2026 bond hearing (Docket No. 14-3); (2) the bond package submitted by Petitioner at the August 4, 2026 bond hearing (Docket No. 14-4); (3) the transcript of the August 4, 2026 bond hearing (Docket No. 14-5); and (4) the Order of the Immigration Judge dated August 4, 2026 (Docket No. 14-6). (Docket No. 14-1 at ¶ 4).

On August 13, 2026, Petitioner filed a Reply to the Opposition. (Docket No. 17).

Thus, this matter is ready for decision. For the reasons stated below, the Court grants Petitioner's Motion to Enforce Judgment.

## II.

## BACKGROUND

Petitioner is a citizen of Guatemala. (Petition at ¶¶ 2, 8). In or about December 2015, when he was about 16 years old, Petitioner entered the United States without inspection. (Id. at ¶ 2). Petitioner has continuously lived in the United States since then. (Id.). Petitioner has lived peacefully in the United States and has been gainfully employed. (Id.). Petitioner has never suffered any type of negative contact with law enforcement or immigration officials. (Id.).

On June 29, 2026, Petitioner was driving his truck during his lunch break when he was surrounded by and blocked in by four vehicles. (Id. at ¶ 3). When two officers from one of the vehicles pressed against Petitioner's driver's side window and told him that he had to exit his truck, Petitioner got out of his truck and was immediately handcuffed. (Id. at ¶ 4). The officers asked him where he was from and where he was born, where his parents were born, and if he had a green card or permit; he did not answer their questions but provided them his California driver's license. (Id. at ¶ 5). The officers confiscated his keys, wallet and phone. (Id.). On information and belief, the officers did not show him a warrant or tell him they had a warrant. (Id. at ¶ 6). The officers told him they were running an investigation but did not tell him why he was being detained. (Id.).

On August 4, 2026 (pursuant to the Court's July 28, 2026 Order, see Docket No. 11 at 7), while Petitioner was at the Adelanto ICE Processing Center in Adelanto, California, a bond hearing took place before an Immigration Judge.

(Docket No. 14-5).[5] At the commencement of the hearing, the Immigration Judge noted and admitted the following exhibits before him: (1) the Notice to Appear from the underlying removal proceedings; (2) the Court's July 28, 2026 Order; (3) Petitioner's 173-page filing (tabs A through D) (see Docket No. 14-4)[6]; and (4) DHS's 3-page filing, Form I-213 (see Docket No. 14-3). (Docket No. 14-5 at 1-2). The Immigration Judge stated that, based on the Court's July 28, 2026 Order, the bond hearing is conducted under Immigration and Nationality Act § 236(a) and that the burden is placed on DHS by clear and convincing evidence. (Id. at 2).

Counsel for DHS made the following arguments:

> Judge, the I-213 does not show any crimes, at least to the extent that the department is aware of, in the United States. Again, we can't speak of [what] could have or would have happened in country of origin. So the crux of the arguments would be flight risk. The department submits to the court that [Petitioner] is an extreme flight risk. And looking at the Guerra factors, as I guess the . . . district court went to great lengths to remind court of them. First of all, [Petitioner] does not have a criminal history. We are not arguing a danger. With regards to immigration history, from the beginning, [Petitioner] entered the United States in violation of immigration laws in this country and has continued to stay in this country in violation of those laws. Manner of entry again without inspection, despite the fact that there's hundreds of ports of entry across the border, [Petitioner] chose to violate the immigration laws in place for this country. With regards to fixed residence, I don't see any utility bills. I don't see a lease agreement. I

---

[5] The bond hearing transcript provided by Petitioner does not appear to be official. Since Respondents have not objected to it, the Court will consider it.

[6] Petitioner submitted the following documents: (1) a bond worksheet (Docket No. 14-4 at 4-5); (2) identity documents of Petitioner and family (Petitioner's birth certificate with translation, Petitioner's Guatemalan passport, Petitioner's cousin's United States passport) (id. at 7-13), (3) Petitioner's and sponsor's proof of income and address (sponsor documents, consisting of a letter, United States passport, 2025 federal income proof of extension, bank account billing summary dated July 3, 2026, and checking account billing summary dated July 1, 2026, and mortgage statement of residence dated July 1, 2026 (id. at 15-22); and Petitioner's proof of United States residency, consisting of federal income tax returns and schedules for 2017 through 2023, and an IRS individual taxpayer identification application (id. at 23-159); and (4) proof of community ties, consisting of four recommendation letters, one with translation (id. at 161-72). (See id. at 2)

don't see a mortgage statement to actually show that he, in fact, has a fixed or has had a fixed residence in the United States. This is this becomes very important in the sense that [Petitioner] does not have any children. Does not have any other family members. From what I could see, there's only a cousin who was born in North Carolina, and it's not clear whether it's an immediate cousin, first cousin, or twice or thrice removed. So that's the only family member that I could see that has been listed. Family ties is one of those. Employment history. I don't see an employer's letter to show that he has been employed for a lengthy period of time. With regards to the sponsor, the handwritten note is more of a letter in support rather than a sponsor letter. The purported sponsor, although he himself does not claim to be, has full confidence [Petitioner] is going to appear for his future hearings. However, that sponsor will not take any responsibility to ensure such. There is a multiple extension letter from IRS for [Petitioner] to file his taxes, and again that that's his right under the law. But however, you know, be deduced that there's something wrong with well, there is a reason. There is some issues with him filing those taxes. We don't know what the what those you know the amount of taxes he made. So in order for the court to ascertain and to consider that under the Hernandez factors, I believe [Petitioner's] last filed taxes were 2023, I believe. I don't see any 2024-2025 taxes, which again, well, first of all, it shows that he's been working without authorization because I don't see that he has any pending applications to allow him to then work while that his application is pending. So he's been working in violation of labor laws of this country, and then for the last two years, without filing taxes, he has violated the tax laws of this country without paying those taxes as the law states and as everybody else is supposed to. Avenues for relief again, given that there's no family tie, no immediate family ties. [Petitioner] potentially is eligible for withholding and [Convention Against Torture], both speculative, discretionary, non-discretionary in nature, very speculative at best. So obviously there's not much of an incentive for him to make himself available for appearances before the court in the future. Let me just look at one final thing, Judge, before I conclude. The evidence is different sizes, so I'm trying to. Yeah. With that, Your Honor, I submit to the court that [Petitioner] is an extreme slight risk, and I ask the court to deny bond in this case.

(Id. at 2-3).

Counsel for Petitioner then made the following arguments:

> So, first of all, Your Honor, the sponsor does indicate that he is willing to take responsibility for supporting [Petitioner], and that [Petitioner] was employed in the construction field. So, there evidence of employment, and in fact, the court could take testimony if it wishes to find out the relationship to the sponsor, who happens to be his employer. There is a demonstrated tax. I agree that the 2024 taxes are not here, your Honor. Obviously, my client is detained, and we have limited access to his documents. But there is a showing of six other tax returns. I think going back to 2018 or 19. So there is a demonstrated compliance with tax laws. To the extent that the government is pointing out that he worked without authorization, under Guerra, having a work history is a positive factor for flight risk analysis, not a negative one. The sponsor having extension on his taxes is should not be something this court takes negative inference from. There's doesn't means there's an issue. People take extensions on their taxes all the time, they get busy. There's things that you have in life besides tax season, sometimes in April, and an IRS extension is an automatic grant until October. So I don't think any negative inference can be taken from that. We have his mortgage statements to show he lives here, meaning the sponsor. We have two bank statements showing he has money in the bank. We have his prior tax return to show that there was income from his business. So again, there is other evidence besides the 2025 tax return for their sponsor. And I think, Your Honor, a lot of what counsel points to, you know, an absence, we don't see a more detailed letter from a sponsor. We don't see more family ties documents, or we don't see this. The burden of proof is on the government to prove by clear and convincing evidence that he is a flight risk. They presented absolutely no evidence other than an I-213, which doesn't show anything about flight risk. It shows that he was pulled over driving his car because they were looking for someone else, it doesn't say that he fled. It doesn't say that he was noncooperative in the process of being detained by immigration. There's no indication of any negative factors in the record for my client. And since the government bears a high burden of proof, the absence of more positive factors that are being pointed out by the government doesn't meet that burden.

(Id. at 3).

Towards the conclusion of the hearing, the Immigration Judge made the following oral ruling: "Okay, certainly bearing in mind the burden of proof and standard of proof, the court does look to all jurisprudence on the flight risk factors. Guerra certainly included, they don't weigh in [Petitioner's favor. On this record, the court is going to find clear and convincing evidence of flight risk. Counsel, the court is going to deny the request for bond." (Id. at 3-4).

As noted above, the Immigration Judge issued a written Order of its decision, finding that DHS "met its burden to establish by clear and convincing evidence that [Petitioner's] release would pose such a significant flight risk that no amount of bond and/or alternatives would be appropriate," and stating that the Immigration Judge "gave an individualized consideration to all flight risk factors, including the surreptitious entry into the United States, dubious reliability of [Petitioner's] address, his limited ties to the United States, dubious sponsorship from a boss who evidently provided unauthorized employment, and an overly speculative pathway to relief." (Docket No. 13 at 4-5; Docket No. 14-6)

## III.

## DISCUSSION

### A. Respondents' Contentions Lack Merit.

As noted above, Respondents, in the Opposition, makes several contentions that do not address the merits of the Motion to Enforce Judgment. (See Docket No. 15 at 2-7). The Court will address Respondents' contentions in turn.

/ / /

/ / /

/ / /

/ / /

/ / /

1. Respondents' authority to detain noncitizens.

Respondents initially contend that, under 8 U.S.C. § 1226(a), DHS has the discretionary authority to detain individuals during ongoing removal proceedings, and note that immigration judges "have broad discretion in deciding whether to release a non-citizen on bond." (Docket No. 15 at 2-3, citing Guerra, 24 I. & N. Dec. 37, 39-40; see also Docket No. 15 at 4-5).

Respondents' contention is boilerplate and meaningless. The issue is not whether the immigration judge had the discretion to deny Petitioner bond based on a finding of flight risk or a danger to the community. Rather, the issue is whether the government at the bond hearing met its burden of proof of proving by clear and convincing evidence that Petitioner is a flight risk.[7]

Respondents appear to mistakenly believe that it was sufficient for Petitioner to receive a bond hearing and for the immigration judge to deny Petitioner bond (see Docket No. 15 at 3 ["Petitioner's has received an individualized bond hearing. The IJ denied bond after considering testimony, documentary evidence, and the Matter of Guerra factors. . . . Respondents may continue to hold Petitioner in detention."]; id. at 5 ["In this case, Petitioner has received a bond hearing, at which the at which the government met its burden to establish that he is a danger to the community."]). Although the Court in the July 8, 2026 Order made clear that Respondents had the burden of proof of proving by clear and convincing evidence that Petitioner is a flight risk (see Docket No. 11 at 7), it seems that Respondents simply are unable or unwilling to accept that burden. (See Docket No. 15 at 3, quoting Hernandez v. Sessions, 872 F.3d 976, 982 (9th Cir. 2017) (prior to Bautista, placing the burden on

[7] At the August 4, 2024, bond hearing, the Immigration Judge only found that Petitioner is a flight risk.

a noncitizen detained pursuant to Section 1226(a) to establish at a bond hearing that he or she is not a flight risk).

2. Petitioner's failure to exhaust administrative remedies.

Respondents next contend that the Court should not address the merits of Petitioner's contentions based on Petitioner's failure to exhaust his administrative remedies. (Docket No. 15 at 3-4 ["When a noncitizen fails to exhaust appellate review at the BIA, court should 'ordinarily' dismiss the habeas petition without prejudice or stay proceedings until he exhausts his appeals."]).

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Exhaustion aids "judicial review by allowing the appropriate development of a factual record in an expert forum; conserve[s] the court's time because of the possibility that the relief app[lied for may be granted at the administrative level; and allow[s] the administrative agency an opportunity to correct errors in the course of administrative proceedings." Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam). Since the exhaustion requirement is judicially created, the failure to exhaust does not deprive a federal court of jurisdiction. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50 (1995). Furthermore, the exhaustion requirement can be waived in Section 2241 cases since it is not a "jurisdictional prerequisite." Ward, 678 F.3d at 1045 (citation omitted). Exhaustion may be waived "if pursuing those [administrative] remedies would be futile." Id. (alteration in original) (citation omitted). Courts also have discretion to waive the exhaustion requirement where administrative remedies are inadequate or not efficacious, irreparable injury would result, or the administrative proceedings would be void. See Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation

omitted). A "key consideration" in exercising such discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme." Id. (quoting Montes v. Thornburgh, 919 F.2d 531, 537 (9th Cir. 1990)).

Here, Respondents has failed to cite any authority for the proposition that exhaustion of administrative remedies is required when a petitioner claims that the respondents failed to comply with a court's conditional release order, like the Court's July 8, 2026 Order. While it appears that "district courts in the Ninth Circuit have reached different conclusions on whether prudential exhaustion applies to enforcement motions," N.A. v. Warden, Adelanto Detention Facility, Case No. 5:25-cv-03007-MBK, 2026 WL 1045196, at *5-6 (C.D. Cal. Apr. 15, 2026) (collecting cases), exhaustion should be waived in this case. See Wu v. Santacruz, Case No. 5:26-cv-03552-JDE, 2026 WL 2058439, at *2 (C.D. Cal. July 14, 2026) (finding that "at least as to the question as to whether the IJ complied with this Court's Order, that question does not require agency expertise but rather a legal determination by this Court" was one factor excusing exhaustion); Kumar v. Rios, Case No. 5:26-cv-01988-MAR, 2026 WL 1764923, at *3 (C.D. Cal. June 12, 2026) ("[E]ven if the BIA were to ultimately reverse the IJ's decision denying bond, that would not afford [the petitioner] an adequate administrative remedy for his prolonged detention in the interim."); Sanchez v. Santacruz, Case No. 5:26-cv-SSS-BFM; Dkt. No. 20 at 6 (C.D. Cal. Apr. 27, 2026) (recommending waiver of the exhaustion requirement because, based on data regarding the time for the BIA to process appeals in 2024 and 2025, "forcing [the petitioner] to exhaust his remedies would result in irreparable injury"), report and recommendation accepted by, 2026 WL 118961 (C.D. Cal. Apr. 30, 2026); Mancia v. Bondi, Case No. 26-cv-01392-PHX-DWL (CDB), 2026 WL 1085090, at *2 (D. Ariz. Apr. 22, 2026) ("Here, the declines to require exhaustion in light of 'the irreparable harm that would result from wrongful

detention, which may result given the lengthy time it takes to have an appeal decided' by the BIA.") (citation omitted); N.A., 2026 WL 1045196, at *6 ("[T]his Court—not the [Bureau of Immigration Appeals]—is best positioned to determine whether the IJ complied with the Court's R&R and the District Court's order adopting it."); Mau v. Chertoff, 562 F.Supp.2d 1107, 1114 (S.D. Cal. 2008) ("It should not fall to the [Bureau of Immigration Appeals] to review [the respondents'] compliance with this Court's judgment.").

3. Lack of Jurisdiction under 8 U.S.C. § 1226(e).

Respondents also contend that, under 8 U.S.C. § 1226(e), the Court lacks jurisdiction to review the outcome of the bond hearing to the extent Petitioner challenges the immigration judge's weighing of the evidence. (Docket No. 5-6).

Contrary to Respondents' assertion, 8 U.S.C. § 1226(e)[8] does not entirely preclude the Court from reviewing bond decisions. See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) ("Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law."). Section 1226(e) "does not 'deprive federal court from their habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error.'" Singh v. LaRose, Case No. 26-cv-1425 JLS (GC), 2026 WL 1387428, at *2 (S.D. Cal. May 18, 2026) (citation omitted). "[F]ederal courts retain jurisdiction to consider constitutional claims or questions of law regarding bond determinations, including 'mixed questions' involving the application of law to facts." N.A., Case No. 5:25-cv-03007-CV-MBK, 2026 WL 734587, at *6 (C.D.

---

[8] Section 1226(e) provides that: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

Cal. Feb. 20, 2026), report and recommendation accepted by, 2026 WL 734585 (C.D. Cal. March 12, 2026).

Here, the Court is not independently reviewing the immigration judge's discretionary decision to deny Petitioner bond; rather, the Court is assessing whether Respondents complied with the Court's July 28, 2026 Order. As such, it does not appear that § 1226(e) applies.

In any event, since Petitioner is challenging the constitutionality of the bond hearing he received (see Petition at 13-25), the Court does not lack jurisdiction over Petitioner's challenges to the immigration judge's decision that Petitioner is a flight risk. See Miri v. Bondi, Case No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *5 (C.D. Cal. Mar. 5, 2026) ("Given that the IJ is to consider the same factors when determining flight risk as it is when determining dangerousness, it is clear to this Court that the determination of flight risk is also a mixed question of law and fact which is reviewable by the district court as a question of law."); N.A., 2026 WL 734587, at *6 (finding that the court had jurisdiction to consider the "mixed question" whether an immigration judge properly determined at a bond hearing that a noncitizen is a flight risk by clear and convincing evidence).

4. Lack of Jurisdiction under 8 U.S.C. § 1252(g).

Finally, Respondents contend that the Court lacks jurisdiction under 8 U.S.C. § 1252(g).[9] (Docket No. 15 at 6-7).

"Section 1252(g) is a narrow provision that applies only to three discrete actions that the Attorney General may take, namely his 'decision or action' to

[9] Section 1252(g) provides that: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) including section 2241 of Title 28, or an other habeas corpus provision, and section 1361 and 1651 of such title, not court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

"commence proceedings, adjudicate cases, or execute removal orders.'" Singh v. Warden of the Desert View Detention Facility, Adelanto, California, Case No. 5:26-cv-00897-DMK, 2026 WL 2276888, at *2 (C.D. Cal. Aug. 6, 2026) (quoting Section 1252(g)). "Instead of 'sweep[ing] in any claim that can technically be said 'to arise from' the three listed actions,' the provision 'refer[s] to just those three specific actions themselves.'" Ibarra-Perez v. United States, 154 F.4th 989, 996 (9th Cir. 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)) (plurality opinion).

Here, Petitioner is not asking the Court to review a decision to commence proceedings, adjudicate cases, or execute removal orders. Moreover, Respondents have not cited any authority holding that Section 1252(g) precludes a court from hearing a judgment enforcement motion challenging the constitutionality of a bond hearing as well as compliance with a court order regarding that bond hearing,

In sum, the Court does not lack jurisdiction over Petitioner's Motion to Enforce Judgment.

**B. The Bond Hearing did not Comply with the Court's July 28, 2026 Order and Violated Petitioner's Right to Due Process.**

As repeatedly noted above, the Court ordered Respondents to provide Petitioner with a bond hearing "at which the government bears the burden of proof of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (Docket No. 11 at 7).

The question is whether the immigration judge's finding that Petitioner is a flight risk based on clear and convincing evidence was an abuse of discretion. See Hernandez v. Warden of Adelanto Processing Center, Case No. 5:26-cv-02231-AJR, 2026 WL 1362396, at *4 (C.D. Cal. May 11, 2026); see also C.A.R.V. v. Wofford, Case No. 1:25-cv-01395-JLT-SKO, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026) ("In constitutional challenges to an IJ's detention determination, a habeas

court generally reviews mixed questions of fact and law under an 'abuse of discretion standard."). "Under abuse of discretion review, the Court 'cannot reweigh evidence,' but instead determines whether the immigration 'applied the correct legal standard.'" Hernandez, 2026 WL 1362396, at *4 (quoting Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024)).

"Clear and convincing evidence requires greater proof that preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contention are [sic] highly probable.'" Sophanthavong v. Palmateer, 378 F.3d 859, 866 (9th Cir. 2004) (quoting Colorado v. New Mexico, 467 U.S. 310, 316 (1984)); see also Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015). The "clear and convincing" standard is a "high burden." Obregon v. Sessions, Case No. 17-cv-01463-WHO, 2017 WL 1407889, at *6 (N.D. Cal. Apr. 20, 2017).

Although the Immigration Judge noted that the Court's July 28, 2026 Order stated that "the burden is to be placed on DHS by clear and convincing evidence" (Docket No. 14-5 at 2), and although the Immigration Judge stated that "[o]n this record, the court is going to find clear and convincing evidence of flight risk" (id. at 3-4; see also Docket No. 14-6 [in the August 4, 2026 written order, the Immigration Judge wrote that "DHS met its burden to establish by clear and convincing evidence that [Petitioner's] release would pose such a significant flight risk that no amount of bond and/or alternative to detention would be appropriate"), it is clear that that the Immigration Judge was only giving lip service to Respondents' "clear and convincing evidence" burden of proof. See R.R.M.C. v. Decker, No. 22 Civ. 2952 (LGS), 2022 WL 4639674, at *4 (S.D.N.Y. Sept. 30, 2022) ("Although the IJ stated repeatedly that the Government bore the burden of proof, the IJ's recitation of the correct legal standard is not dispositive."); Ramos-Portillo v. McAleenan, Case No.

18-cv-00260-MWF-SS, 2019 WL 324699, at *1 (C.D. Cal. July 19, 2019) ("[T]he IJ's mere recitation of the applicable legal standard is not enough when the IJ's decision makes it clear – as it does in this case – that the IJ did not actually apply the standard in his reasoning and decision. . . . It is the application of the clear-and-convincing standard, not its recitation, that matters."); see also Nat. Res. Def. Council, Inc. v. Pritzker, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and conclusion.").

The Immigration Judge noted that the only evidence submitted by DHS at the bond hearing was Petitioner's Form I-213. (Docket No. 14-5 at 1; see Docket No. 14-3). As Petitioner points out (see Docket No. 14 at 14), the information in Form I-213 tends to show that Petitioner is not a flight risk. See Arechiga v. Bowen, Case No. 5:26-cv-01516-AS, 2026 WL 1500398, at *4 (C.D. Cal. May 26, 2026) ("It is undisputed that [the respondents] failed to present any evidence that [the petitioner] posed a flight risk while [the petitioner] submitted extensive evidence demonstrating his deep and long-standing ties to the United States."). Counsel for DHS appeared to acknowledge that there is little information in Form I-213 to show that Petitioner is a flight risk, but argued that Petitioner's manner of entry, as apparently obtained from Form I-213 (see Docket No. 14-3 at 1-2), shows that Petitioner is a flight risk. (Docket No. 14-5 at 2 ["With regard to immigration history, from the beginning, [Petitioner] entered the United States in violation of immigration law in this country and has continued to stay in violation of those laws. Manner of entry again without inspection, despite the fact that there's hundreds of ports of entry across the border, [Petitioner] chose to violate the immigration laws in place for this country."]). Although the Immigration Judge found, apparently based on the information in Form I-213, one of the Guerra flight risk factors, namely, "surreptitious entry into the

United States" (Docket No. 14-6 at 1), the Immigration Judge's finding was improper, as discussed below. The fact that the Immigration Judge's findings about other Guerra flight risk factors, specifically, "dubious reliability of [Petitioner's] address, his limited ties to the United States, dubious sponsorship from a boss who evidently provided unauthorized employment, and an overly speculative pathway to relief" (Docket No. 14-6) were not based on evidence provided by the government serves to show that the Immigration Judge's did not place the burden of proof on Respondents to prove by clear and convincing evidence that Petitioner is a flight risk. Indeed, the Immigration Judge made such findings despite the fact that counsel for Petitioner at the hearing argued that such findings would not be proper in light of the burden of proof. (See Docket No. 14-5 at 3 ["The burden of proof is on the government to prove by clear and convincing evidence that [Petitioner] is a flight risk. They presented absolutely no evidence other than an I-213, which doesn't show anything about flight risk. . . . There's no indication of any negative factors in the record for my client. And since the government bears a high burden of proof, the absence of more positive factors that are being pointed out by the government doesn't meet that burden."]).

Therefore, Petitioner's contention that the Immigration Judge did not place the burden of proof on Respondents to prove by clear and convincing evidence that Petitioner is a flight risk (see Docket No. 14 at 13-15) is well-taken. See Singh v. Hott, Case No. 4:26-cv-256-DJH, 2026 WL 1880217, at *6 (W.D. Ky. June 30, 2026) ("Given the government's apparent lack of evidence, the immigration judge impermissibly placed the burden on [the petitioner] to prove that he was not a flight risk.").

/ / /

/ / /

Moreover, as Petitioner contends (see Docket No. 14 at 15-24), the Immigration Judge abused his discretion in finding the flight risk factors of "surreptitious entry into the United States, dubious reliability of [Petitioner's] address, his limited ties to the United States, dubious sponsorship from a boss who evidently provided unauthorized employment, and an overly speculative pathway to relief" (Docket No. 14-6 at 1). As to the finding of "surreptitious entry into the United States," the Immigration Judge failed to explain how Petitioner's entry into the United States, "surreptitious" or otherwise, over ten years ago evidences that he is a flight risk. See Ji v. Warden, Case No. 1:26-cv-03442 DJC SCR, 2026 WL 1733618, at *7 (E.D. Cal. June 16, 2026) (noting that the immigration judge "does not explain why Petitioner's . . . manner of entry constitute[s] clear and convincing evidence of flight risk"). As to the finding of "dubious reliability of [Petitioner's] address," the Immigration Judge failed to explain the basis for that finding, and the Immigration Judge failed to state how he arrived at that finding in light of the seven years of income tax filings submitted by Petitioner (see Docket No. 14-4 at 23-159). Miri, 2026 WL 622302, at *9) (noting that the immigration judge "did not describe . . . what evidence was relied on"). As to the finding of "limited ties to the United States," the Immigration Judge failed to state how he considered the four letters of support from individuals who have known Petitioner for more than ten years (see Docket No. 14-4 at 161-72). As to the finding of Petitioner's "dubious sponsorship from of a boss who evidently provided unauthorized employment," the Immigration Judge failed to explain why Petitioner's boss' sponsorship of Petitioner was "dubious" or how Plaintiff's submissions about that sponsorship (see Docket No. 4 at 15-22) factored into that finding. Finally, as to the finding of Petitioner's overly speculative pathway to relief," the Immigration Judge failed to explain why Petitioner's speculative pathway to relief is evidence of his risk of flight. See Singh,

2026 WL 227688 at *8 ("[T]he Immigration Judge here provided no rationale why it should be concluded that under these particular circumstances, [the petitioner] would try to flee rather than appear in immigration court to pursue his claims for relief removal proceedings."); N.A., 2026 WL 1045196, at *8 ("[A]ll unresolved claims for immigration relief are, by definition, 'speculative,' but that does not mean a noncitizen cannot be trusted to appear for future court proceedings on that basis alone.").

Based on this record, the Court finds that the Immigration Judge's failure to apply the correct burden of proof violated the Court's July 28, 2026 Order and violated Petitioner's right to due process.

**C. The Proper Remedy is Petitioner's Release from Custody.**

Contrary to Respondents' assertion (see Docket No. 15 at 8), the proper remedy here is Petitioner's immediate release from custody. In the July 28, 2026 Order, the Court ordered that Petitioner be released from custody unless he was provided with a bond hearing within seven days. (Docket No. 11 at 7). The Court's July 28, 2026 Order gave Respondents an opportunity to correct a constitutional violation. See Rose v. Guyer, 961 F.3d 1238, 1246 (9th Cir. 2020) ("A conditional writ of habeas corpus declares that a petitioner is being held in custody in violation of his constitutional (or other federal) rights, but delays release of the petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court.") (internal quotations and citations omitted). Because the bond hearing Petitioner received did not comply with the Court's July 28, 2026 Order and was constitutionally defective, Petitioner's immediate release from custody is warranted. See Rose, 961 F.3d at 1246 ("[I]f [the government] fails to cure the constitutional error, *i.e.*, when it fails to comply with the order's conditions, . . . the conditional grant of habeas corpus *requires* the petitioner's release from custody.") (quoting

Harvest v. Castro, 531 F.3d 737, 750 (9th Cir. 2008)); N.A., 2026 WL 1045196, at *10 (enforcing earlier conditional release order through an immediate order of release).

## IV.

## ORDER

Respondents are ordered to immediately release Petitioner Juan Herrera Ramirez (A# 246-061-978) on the same conditions (if any) that he was subject to when he was arrested and detained. Respondents must return to Petitioner any property confiscated during his arrest. Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: August 17, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE